**In re BLIM.**

**No. 27580.**

District Court, N. D. Illinois, E. D.

Oct. 3, 1933.

Edward J. Hess and John Elliott Byrne, both of Chicago, Ill., for respondent.

BARNES, District Judge.

On September 25, 1933, the July grand jury for this district and division, which grand jury had been held over to the September term of this court, filed a petition in the office of the clerk of this court, wherein they presented and charged that the respondent, Henry L. Blim, appeared before said grand jury on July 31, 1933, and, after being duly sworn, made answers to questions propounded to him which were "evasive, false and misleading, with a deliberate and wilful intent to withhold the true facts within his knowledge, and to hinder, block and delay the inquiry of this grand jury and to obstruct the due process of the Federal Court and the administration of justice," and said grand jury, by its petition, requested that said Henry L. Blim be dealt with as a contumacious witness. Attached to said petition is a transcript of the testimony of the witness before the grand jury on July 31, 1933.

On September 26, 1933, the respondent appeared before the court in person and by counsel, and the court, after reading the testimony of the respondent before the grand jury, directed the respondent again to appear before the grand jury and to make full, true, and complete answer concerning the matters about which he had theretofore been questioned by said grand jury, and, in particular, to make full, true, and complete answer to questions in said order specifically set forth.

On September 27, 1933, the grand jury filed in the office of the clerk of this court another petition, wherein they presented and charged that on September 26, 1933, the respondent again appeared before said grand jury and was questioned upon the matters specified by the court in the aforesaid order that, notwithstanding the order of this court, said witness did not make "full, true and complete answers as ordered and directed, that said witness continued to give evasive, false and misleading answers with a deliberate and wilful intent to withhold the true facts within his knowledge, that the conduct of said witness in giving said evasive, false and misleading answers to the questions propounded to him was such as to hinder, block and delay the inquiry of this grand jury and to obstruct the due process of the Federal Court and the administration of justice." Attached to the said petition is a transcript of the testimony of the witness before said grand jury on September 26, 1933. The grand jury prayed that the respondent be dealt with as a contumacious witness.

When the matter was called up on September 27, 1933, the respondent asked for, and was granted, a continuance to the following day.

On September 28, 1933, the respondent was called upon to plead to the two presentments. He pleaded not guilty to the second presentment, and stood mute as to the first. Whereupon the court caused to be entered a plea of not guilty as to the first presentment also.

Upon the hearing which followed, the government introduced transcripts of the testimony of the witness before the grand jury on July 31, 1933, and September 26, 1933. The respondent introduced no evidence, and moved for a finding of not guilty.

The rules decisive of the case at bar are found in the case of U. S. v. McGovern (C. C. A. 2) 60 F.(2d) 880, 889:

"A wiley witness who avoids the danger of a blunt refusal to answer by mere lip service to his duty and conceals the truth by the use of words may be as obstructive as his fellow of less mental agility who simply says nothing. When the answers of a witness amount to the crime of perjury, the offender may be guilty of contempt, provided there is also some obstruction of justice in addition to the necessary elements of that crime. Ex parte Hudgings, 249 U. S. 378, 39 S. Ct. 337, 63 L. Ed. 656, 11 A. L. R. 333. But the power to punish for contempt does not reside in the court to compel a witness to testify in accord with the court's conception of the truth. On the other hand, a witness who obstructs the course of justice by so acting that the court's performance of its duty is frustrated is not beyond the reach of the contempt power because he chooses false swearing as the means to his end in so doing. Of course, the contempt power does not afford an alternative method for trying an accused for perjury. No deprivation of the right of one charged with that crime to a trial by jury can be sanctioned. Perhaps the best way to put it is that, where the court is justified in believing, and does believe, that a witness has obstructed the administration of justice, the witness may be adjudged in contempt whether he has sworn falsely or not, but, where the court is not justifiably convinced that the performance of its duties has been obstructed, it cannot act under the contempt power even though perjury has been committed.

"When this test is applied to the conduct of the appellant, it is plain that he was properly adjudged in contempt if (1) his failure to disclose with substantial accuracy what use he had made of the $380,000, he drew in cash was obstructive and (2) he could have done so."

The observations of Judge Hand in the case of U. S. v. Appel, 211 F. 495 (D. C. S. D. N. Y.), are also instructive:

"The power of the court to treat as a criminal contempt a persistent perjury which blocks the inquiry is settled by authority in this circuit. Re Schulman (C. C. A. 2d Cir.) 23 Am. Bankr. Rep. 809, 177 F. 191, 101 C. C. A. 361. It is indeed impossible logically to distinguish between the case of a downright refusal to testify and that of evasion by obvious subterfuge and mere formal compliance.

"The rule, I think, ought to be this: If the witness' conduct shows beyond any doubt whatever that he is refusing to tell what he knows, he is in contempt of court. That conduct is, of course, beyond question when he flatly refuses to answer, but it may appear in other ways. A court, like any one else who is in earnest, ought not to be put off by transparent sham, and the mere fact that the witness gives some answer cannot be an absolute test. For instance, it could not be enough for a witness to say that he did not remember where he had slept the night before, if he was sane and sober, or that he could not tell whether he had been married more than a week. If a court is to have any power at all to compel an answer, it must surely have power to compel an answer which is not given to fob off inquiry. Nevertheless, this power must not be used to punish perjury, and the only proper test is whether on its mere face, and without inquiry collaterally, the testimony is not a bona fide effort to answer the questions at all."

See, also, O'Connell v. U. S., 40 F.(2d) 201 (C. C. A. 2); U. S. v. McGovern, 1 F. Supp. 568 (D. C. S. D. N. Y.); Lang v. U. S., 55 F.(2d) 922 (C. C. A. 2).

When the rule laid down in the McGovern Case, supra, is applied to the facts of the case at bar, it is plain that the respondent is guilty of contempt if (1) his failure to disclose, with substantial accuracy, what disposition he made of the $7,500 he drew in cash from the bank was obstructive, and (2) he could have done so.

The court has not had the benefit of observing the demeanor of the respondent while on the stand, but the court has seen and observed the respondent. He is apparently a bright, alert, intelligent young man, who testifies that he has had training as a lawyer and has practiced the profession of a lawyer. He does not look like a person who, having a bank account in 1927, would have drawn $7,500 from his bank and placed the same in a tin box in a so-called "vault" in a lawyer's

office, but the mere fact that he does not look like a man who, in 1927, would have done that, would hardly justify holding him guilty of contempt because he told the grand jury that he did do that very thing. That fact, however, is only one of the facts before the court. All of the testimony of the respondent given on the occasions of his appearances before the grand jury is before the court, and the question is, Did the respondent obstruct the processes of the court by the manner of his testifying and the substance of his testimony?

 The court cannot in this proceeding punish the respondent for perjury, and this is true, even though it be conceded that, if the respondent did not commit perjury on the occasions of his two visits before the grand jury, he did not obstruct justice. It gets down to this, if the court is convinced that, when the respondent did and said what he did and said before the grand jury on the two occasions in question he obstructed justice, then he is guilty of contempt, regardless of the fact that what he said constitutes perjury.

 Upon the argument, counsel for the respondent phrased his argument, colloquially, as follows: "Judge, you cannot act upon what you know as a man; you must act only upon what you know judicially." If by this statement counsel intended to argue that, since the respondent had told a certain story which was not inherently impossible, and since he was not contradicted by himself or by some one else, the court was bound to believe that story, then the answer is that it is not a correct statement of the law. Dean Wigmore, in his excellent work on Evidence, says: "A mere assertion of any witness does not of itself need to be believed, even though he is unimpeached in any manner; because to require such belief would be to give a quantitative and impersonal measure to testimony." Wigmore on Evidence (2d Ed.) § 2034.

The learned author cites a number of cases, including several in the federal courts, in support of the quoted statement. In this jurisdiction, we are accustomed to instruct juries that they have the right to weigh and examine evidence in the light of the common knowledge and experience of mankind and to test the weight of evidence by their knowledge and experience and their judgment derived from experience, observation, and reflection. People v. Turner, 265 Ill. 594, 107 N. E. 162, Ann. Cas. 1916A, 1062. In other words, the trier of facts is not required to be absurd. He is required to be blind only in the sense that he is to be no respecter of persons. He is not required to believe an absurd story simply because some witness has the temerity to tell it upon the witness stand. The court has read the testimony of the respondent several times, and is compelled to say that it does not believe that testimony.

The court is of the opinion that the failure of the respondent to testify truthfully has obstructed, and is obstructing, justice in this court, and, accordingly, the respondent is adjudged guilty of contempt of this court.

The sentence of the court is that the respondent, Henry L. Blim, be committed to the custody of the Attorney General for confinement in a common jail for the period of three months, with the privilege of purging himself of said contempt within ten days from this date by fully, freely, and truthfully testifying.