In the Matter of the Application of ALFRED E. SMITH, JR., and Others, Constituting the Committee of the Council of the City of New York, to Investigate the Affairs and Conduct of the Municipal Civil Service Commission of the City of New York, Petitioners, for an Order Adjudging PAUL J. KERN, Individually and as President of the Municipal Civil Service Commission of the City of New York, Respondent, Guilty of a Criminal Contempt of Court for Refusal to Obey the Order of the Supreme Court, Made on November 22, 1940.

In the Matter of the Application of ALFRED E. SMITH, JR., and Others, Constituting the Committee of the Council of the City of New York, to Investigate the Affairs and Conduct of the Municipal Civil Service Commission of the City of New York, Petitioners, for an Order Committing PAUL J. KERN, Individually and as President of the Municipal Civil Service Commission of the City of New York, Respondent, to the County Jail of the County of New York, for Refusing to Testify in Accordance with the Mandate of the Supreme Court, Made on the 22nd Day of November, 1940.

Supreme Court, Special Term, New York County, May 29, 1941.

*Emil K. Ellis* [*Emil K. Ellis* and *Louis Gruss* of counsel], for the petitioners.

*William C. Chanler, Corporation Counsel* [*Robert H. Schaffer, Oscar L. Tucker* and *Denis B. Sullivan* of counsel], for the respondent.

WALTER, J.   Two motions by a committee of the city council are here before the court.   One is to punish Paul J. Kern as for a criminal contempt of court, and the other is to commit said Kern to the county jail for refusing to testify.   Both arise out of the same facts and may be disposed of in one opinion.

In May, 1940, the city council by resolution authorized a committee of its members " to examine into the affairs and conduct of

the Commissioner and the City Civil Service Department." In September, 1940, the resolution was so amended as to authorize each member of the committee to act as a subcommittee of one and to conduct private hearings. A subpœna requiring said Kern, then and now president of the municipal civil service commission, to appear and testify was duly issued and served. He did not do so and the committee declared him to be in contempt and authorized the commencement of a proceeding to adjudge him in contempt and to compel obedience to the subpœna. Such proceeding was commenced in this court and resulted in an order, dated November 22, 1940, by which Kern, hereinafter called respondent, was adjudged in contempt of the committee in that without reasonable cause he had refused to be examined and sworn as required by the subpœna, and by which it was directed that a warrant issue to the sheriff commanding him to apprehend respondent and commit him to the county jail, there to remain until he submitted to be sworn and to testify before the committee or until he should be discharged according to law. The order further provided, however, that respondent might purge himself of said contempt by appearing at such time and place as the subcommittee should designate " and by being sworn and testifying in accordance with the mandate of said subpœna." It also provided that execution of the order be stayed pending an appeal. The order was thereafter affirmed by the Appellate Division (260 App. Div. 1003) and by the Court of Appeals (285 N. Y. 632).

After such affirmance, and on April 4, 1941, respondent appeared before the committee and was sworn. He requested permission to have a stenographer employed by the municipal civil service commission present to transcribe everything said, or in lieu thereof to be furnished with a copy of the transcript. Those requests were refused, and he thereupon stated that he would have to copy all the questions and answers, and assigned as a reason therefor that he had " no confidence whatever in the record of the committee," although the stenographer then present pursuant to employment of the committee for the purpose of reporting the hearing was a certified shorthand reporter duly qualified as such under the law of this State, having wide experience and long publicly engaged in business as a law reporter and having acted as such in numerous courts. Respondent then proceeded to write out each question and answer in longhand and persisted in so doing despite repeated directions of the chairman of the committee that he answer the questions expeditiously. Repetition of the questions and of the directions to answer brought forth from respondent repeated complaints by him that he was being " interrupted " in his writing. He

also insisted upon having questions repeated very slowly so that he could write them. The result, if not the intended effect, was to make any effective examination impossible, and it is upon the basis of that attitude of respondent that these motions are made.

In opposition to the motions it is urged, not that the questions put were not legal and pertinent, but that every question was in fact answered and that there thus has been no refusal to be examined or to answer. I cannot agree with a contention so absurd. The duty of a witness to answer questions is a duty to answer them when put, without unreasonable or unnecessary delay, and the duty is not complied with by giving answers after such period of waiting as the witness sees fit to impose. If a witness in a legislative inquiry may take his own time in answering, I can see no reason why a witness in a judicial proceeding may not do the same thing, and if that may be done, then it is in the power of any witness effectually to stifle any investigation or trial, legislative or judicial.

It is further urged that respondent took no more time than was necessary in order to enable him to write out the questions and answers, that as he was refused a copy of the transcript or the right to have his own stenographer, he was within his rights in making his own record in longhand as the examination proceeded, and that there thus was no violation of any statute or order, or, to put it in the language of subdivision 3 of section 406 of the Civil Practice Act, that the refusal to answer, if any, was not " without reasonable cause." This alleged right of respondent to have a record of his examination is even sought to be erected into a great constitutional question striking deep at the fundamental rights and liberties of individual citizens. Again, however, I think the contention wholly untenable. I am deeply sensible to the necessity for preserving the rights of individuals against improper exertions of governmental power, but I cannot see that possession of a copy of the record of the examination of this respondent is any more a right of his than possession of a copy of the record of the examination of any and every witness before any court or legislative body is a right of any and every such witness. If this respondent can delay this councilmanic investigation while he writes out the questions and answers in longhand, and in effect defeat it because of the time consumed and interruptions caused thereby, I can see no reason why any witness before any grand jury may not similarly delay and in effect defeat any grand jury investigation, or why any witness upon the trial of any lawsuit may not similarly impede such trial. As the Court of Appeals has sustained the legality of private hearings by a subcommittee of one, it follows that such hearings stand upon the same plane as any other legally instituted investiga-

tion, and respondent accordingly has no greater rights or privileges than any witness before any legally constituted tribunal; and no one ever yet has had the temerity to suggest that every witness before every tribunal is entitled to have his own stenographer present or to be furnished with a copy of his testimony

Respondent is entitled to all the privileges and protection extended by law to witnesses in judicial proceedings (*Matter of New York City Council* v. *Goldwater*, 284 N. Y. 296, 302), but not to any greater privileges.

It follows, not that respondent has been guilty of a contempt of court (*People ex rel. Falk* v. *Sheriff of New York County*, 258 N. Y. 437; *People ex rel. Hastings* v. *Hofstadter*, 258 id. 425; *Matter of Spector* v. *Allen*, 281 id. 251, 258–260), but that he has failed *to purge himself of the contempt of the councilmanic committee of which he was adjudged guilty by the order of November 22, 1940*, in that he has failed to testify in accordance with the mandate of the subpœna issued by said committee. *Having so failed to purge himself of that adjudged contempt*, he should be committed to jail as directed by that order.

The motion to punish respondent as for a criminal contempt is accordingly denied, and the motion to commit to jail for failure to obey the subpœna is granted. Settle orders.